## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:                             )
REBECCA FAYE HEFFNER AND   )
GEORGE DEWEY HEFFNER,      )
      Debtors.                  )
                             )
_____   )
REBECCA FAYE HEFFNER AND   )     1:16-cv-1506 (LMB/JFA)
GEORGE DEWEY HEFFNER,      )
      Appellants             )     15-01177-BFK
                             )
     v.                       )
                             )
FIRST VIRGINIA COMMUNITY BANK
      Appellee.

## MEMORANDUM OPINION

Debtor-Appellants Rebecca Faye Heffner and George Dewey Heffner ("appellants" or "the Heffners") appeal the finding of the United States Bankruptcy Court for the Eastern District of Virginia ("bankruptcy court") that their debt to First Virginia Community Bank ("appellee" or "FVCB") is non-dischargeable under 11 U.S.C. § 523(a)(2)(B), 11 U.S.C. § 723(a)(3), and 11 U.S.C. § 727(a)(5). For the reasons that follow, the bankruptcy court's finding of non-dischargeability will be affirmed.

### I.    FACTUAL BACKGROUND

The Heffners are a married couple who owned a convenience store called Little Country Store, Inc., in Purcellville, Loudon County, Virginia. [Bankr. Dkt. 70] at 3. In April 2011, they also owned Heffner Properties, LLC ("HP"), which in turn owned "a 58.5 acre parcel of real property also located in Purcellville, referred to by the parties as the 'Mountain Property.'" Id.

In April 2011, the Heffners "applied for a commercial loan with FVCB." Id. at 3. As part of that application, the Heffners and their bookkeeper, Ellis Hawkins ("Hawkins"), met with FVCB's commercial lending officer, Bill Byers ("Byers"). Id. The bankruptcy court found that

at that meeting, Byers asked the Heffners for three years of tax returns and a personal financial statement ("PFS").[1] Id. at 4.

The Heffners subsequently provided Byers with a copy of a PFS dated June 30, 2010 (the "2010 PFS").[2] Id. at 13. In the Liabilities section of the 2010 PFS, the Heffners listed: (1) a $2,500 credit card balance; (2) a $576,677 mortgage on their personal residence; and (3) an approximately $3.2 million mortgage on the Mountain Property. Id. at 5. The 2010 PFS included a statement saying

> Each [of the] undersigned represents and warrants that the information provided is true and complete and that the Bank may consider this statement as continuing to be true and correct until a written notice of a change is given to the Bank by the undersigned.

Id. at 15.

On May 5, 2011, Rebecca Heffner signed a credit agreement with the Merchants Grocery Company ("MGC") as a guarantor. Id. at 5. On September 1, 2011, both Heffners signed a promissory note payable to MGC with a principal amount of $820,000. Id. at 6. In violation of the warranty in the 2010 PFS, the Heffners never informed FVCB of these new liabilities. Id. at 5–6.

On September 7, 2011, the FVCB loan closed after the Heffners executed a Business Loan Agreement on behalf of Little Country Stores and HP, signed a promissory note with a principal amount of approximately $2.7 million, and agreed to a commercial guaranty. Id. at 6. In that commercial guaranty, appellants represented that "no material adverse change has occurred in [their] financial condition since the date of the most recent financial statements

---

[1] The Heffners testified that they were never asked for, and did not provide, such a statement, but the bankruptcy court did not find them credible. On appeal, they have not challenged the court's findings of fact regarding this point. See Appellants' Br., [Dkt. 6] at 13.

[2] The record does not clearly state why the Heffners originally prepared the 2010 PFS.

provided to Lender and no event has occurred which may materially affect Guarantor's financial condition." Id. at 15 (internal quotation marks omitted).  Contrary to that representation, they failed to disclose both the May 5, 2011, credit agreement and the September 1, 2011, $820,000 note.  The FVCB loan was secured by the Little Country Store property as well as the Mountain Property owned by HP.

In March 2014, the Heffners sold their interest in HP (and therefore the Mountain Property) to their son, George Heffner, Jr., and his wife.  Id. at 7.  The Heffners received $1.5 million in cash as part of this transaction, which they paid to FVCB in exchange for FVCB releasing its lien on the Mountain Property.  Id.  The Heffners also received a secured promissory note in the amount of $608,350 and an unsecured promissory note in the amount of $25,000 in exchange for HP, about which they did not inform FVCB.  Id. at 7–8.

Soon after they sold HP, the Heffners took out a $450,000 loan from Leeds Manor Capital, LC ("LMC), which "was secured by a pledge and assignment of the $608,350.00 Secured Promissory Note that the [Heffners] received in connection with the sale of their equity interests in HP."  Id.

On September 22, 2015, the Heffners filed a joint voluntary petition for Chapter 7 bankruptcy.[3]  On December 28, 2015, FVCB filed its three-count complaint in this adversary proceeding.  Count 1 alleged non-dischargeability under 11 U.S.C. § 523(a)(2)(B), for use of a materially false statement, and under 11 U.S.C. § 523(a)(6), for willful and malicious injury to property.  Count 2 alleged non-dischargeability under 11 U.S.C. § 523(a)(4), for fraud or defalcation.  Count 3 raised several objections to discharge, including four claims of fraudulent

---

[3] As of the date on which the Heffners filed the Chapter 7 petition, FVCB claimed that a balance of $964,000 was outstanding on the loan to the Heffners.  In re Heffner, Case 15-13310-BFK, [Dkt. 1] at 24 (E.D. Va. Bankr. Sept. 22, 2015).

transfers,[4] failure to keep and preserve recorded information regarding the LMC loan, making false oaths with intent to defraud regarding the LMC loan and other property at the meeting of the creditors, and failure to satisfactorily explain the loss of the funds from the LMC loan, respectively in violation of § 727(a)(2)(A), (a)(3), (a)(4), and (a)(5).

On May 18, 2016, FVCB filed a Motion for Summary Judgment, to which appellants responded. On June 30, 2016, the bankruptcy court granted in part and denied in part FVCB's motion. [Bankr. Dkt. 70] at 2. With respect to Count 1, the bankruptcy court concluded that FVCB had shown that the 2010 PFS was a materially false statement in writing respecting the Heffners' financial condition on which FVCB reasonably relied, leaving for trial only the issue of whether the Heffners furnished the 2010 PFS to FVCB with the intent to deceive the bank. Id. The bankruptcy court denied summary judgment with respect to all the claims in Count 3, which also proceeded to trial. Id.[5]

One July 5, 2016, three days before trial, FVCB sought to amend its complaint to include a new § 523 willful and malicious injury claim arising out of the Heffners' sale of HP to their son and daughter-in-law, which included a reference to the LMC loan. Id. The court denied that motion as prejudicial to the Heffners, although it permitted evidence regarding that sale as pertinent to the Heffners' credibility. Id.

At the conclusion of the two-day trial on July 11, 2016, the bankruptcy court dismissed Count 2 with the permission of FVCB and took the remainder of the claims under advisement. Id. at 2. On August 26, 2016, the bankruptcy court issued its Findings of Fact and Conclusions of Law, id. at 27, in which it found that the Heffners' debt to FVCB was not dischargeable for

---

[4] The Heffners' use of the LMC loan proceeds was one of the bases for the fraudulent transfer claims. The other claims concerned transactions that are not relevant to this appeal.

[5] FVCB did not move for summary judgment with respect to Count 2.

three reasons, each of which was independently sufficient to sustain a finding of non-dischargeability. Id. at 26.

In particular, as to Count 1 the court found that the Heffners furnished the materially false 2010 PFS to FVCB with intent to deceive, and therefore that FVCB had successfully shown that the debt was not dischargeable under § 523(a)(2)(B).  Id.[6]

As to Count 3, the bankruptcy court concluded that the Heffners failed to maintain books and records relating to the $450,000 LMC loan proceeds, and failed to satisfactorily account for the loss of those proceeds, rendering the debt to FVCB not dischargeable under both § 727(a)(3) and § 727(a)(5). Id. Specifically, the court found that the Heffners' "testimony on the use of these funds was vague and unsupported by any documentation," id. at 25, and that:

> The [Heffners] had no records from which the [c]ourt or the creditors could have discerned how the $450,000.00 was spent. Although the [c]ourt accepts the [Heffners'] testimony that they used these proceeds to purchase inventory for the store and for personal bills, the [Heffners] were unable to produce any records to verify their use of the funds.[7]

Id. at 21.

On the fraudulent transfer and false oaths claims, the bankruptcy court held that FVCB had not met its burden of proof because the debtors did not have the necessary intent to defraud. See id. Accordingly, the court found that those claims were not a basis for denying the Heffners a discharge. See id. FVCB has not cross-appealed these findings. Appellee's Br. at 1–4.

On September 8, 2016, the Heffners filed a Motion to Reconsider, arguing that the complaint did not put them on notice that the LMC loan would be at issue and purporting to

---

[6] The bankruptcy court simultaneously concluded that the statement within the 2010 PFS that the Heffners had never been involved in bankruptcy proceedings before, which was also false, was not a basis for a finding of non-dischargeability because the Heffners lacked the requisite intent to deceive as to that statement.

[7] The Heffners eventually produced records addressing some, but not all, of these proceeds in connection with a Motion to Reconsider filed after the trial. See [Bankr. Dkt. 79] at 3.

provide documentation explaining what happened to the proceeds of that loan. [Bankr. Dkt. 73] at 3–7. The court denied reconsideration, concluding that the complaint alleged that the Heffners had "failed to keep or preserve recorded information from which the [Heffners'] financial condition or business transactions might be ascertained," and that the evidence presented in connection with their Motion to Reconsider was available to them at the time of trial. [Bankr. Dkt. 79] at 3. The court also found that even the additional evidence the Heffners proffered in their Motion to Reconsider did not completely account for over $100,000 of the LMC loan proceeds. Id.

The Heffners timely appealed to this Court. [8]

## II.   DISCUSSION

Appellants argue that the 2010 PFS was not false at the time that it was made, and that the bankruptcy court should not have considered the LMC loan because it was outside the scope of FVCB's Complaint. Appellee has raised a number of procedural objections to this appeal, but those objections need not be addressed because, on the merits, appellants' arguments fail.

### A.   Standard of Review

This Court reviews a bankruptcy court's conclusions of law de novo and its findings of fact for clear error. In re Sunterra Corp., 361 F.3d 257, 263 (4th Cir. 2004). Appellee argues that the bankruptcy court's decision to consider the LMC loan is equivalent to a decision to admit evidence and therefore reviewable only for abuse of discretion, Appellee Br., [Dkt. 7] at 1; however, appellants' real argument is that the LMC loan was not adequately pleaded, which calls for a conclusion of law. Accordingly, this Court will review the adequacy of the complaint de

---

[8] This Court directed that the Heffners file any reply brief by January 26, 2017 [Dkt. 2]. As of the date of this Memorandum Opinion, no reply brief has been filed. Finding that the submitted briefs adequately present the issues, the Court has determined that oral argument would not assist the decisional process.

novo. Cf. E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir.

2011) (reviewing the adequacy of a complaint through a motion to dismiss de novo).

### B. Use of A Materially False Statement

The bankruptcy court concluded that the Heffners provided FVCB a materially false

statement, the 2010 PFS, upon which the bank reasonably relied in extending the credit at issue,

rendering the debt non-dischargeable under § 523(a)(2)(B). Appellants argue that the Heffners

did not provide the 2010 PFS to FVCB with the intent to deceive and that it was not materially

false.[9] Both of these arguments challenge an issue of fact subject to review for clear error.

Although the Heffners testified that they did not provide the 2010 PFS to FVCB,

surmising that FVCB must have obtained it from BB&T, a previous lender, the bankruptcy court

thoroughly explained its conclusion that Byers' testimony was more credible than the self-

serving testimony of the Heffners. [Bankr. Dkt. 70] at 13. Specifically, the court observed that

the Heffners' testimony on a wide variety of issues shifted over time, justifying the court's

acceptance of Byers' version of events. Id. For example, George Heffner originally testified that

the Heffners received nothing from LMC, but on cross-examination by his own counsel admitted

that they received $450,000. Id. Similarly, at the meetings of the creditors, Rebecca Heffner

testified that a $500,000 line item in a 2014 financial statement was personal property sold to

neighbors and friends, but at trial she admitted it was the cash surrender value of a life insurance

policy. Id.

The bankruptcy court's conclusion that the Heffners provided the 2010 PFS with intent to

deceive was supported by the record; specifically, the failure of the Heffners to include the May

---

[9] Appellants also argue that the bank did not reasonably rely on the 2010 PFS because it was not
signed, but § 523(a)(2)(B) does not require the statement to be signed and, in light of the
commercial guaranty representing that the "information provided" to FVCB was "true and
complete," it was reasonable for FVCB to rely on the 2010 PFS.

4, 2011 credit agreement with Merchants Grocery which Rebecca Heffner guaranteed and the over $800,000 in liability to Merchants Grocery, which they had incurred only one week before closing on the FVCB loan. Id. at 15–16. The court reasonably found that the Heffners could not have forgotten such recent developments and that their failure to update the 2010 PFS despite such a significant change supports an inference that they sought to mislead FVCB about the state of their finances. Id. at 16. Accordingly, the court did not clearly err in finding that the Heffners provided the 2010 PFS with intent to deceive.

Similarly, the bankruptcy court did not clearly err in concluding that the 2010 PFS was materially false. It is beyond question that the status of the Heffners' finances was material to FVCB's decision about whether to loan them over $2 million. Although the Heffners repeatedly argue in their brief that the 2010 PFS provides only a "snapshot" of their finances at a single moment in time, that argument is contradicted by the plain language of the document, which says that the bank "may consider this statement as continuing to be true and correct until a written notice of a change is given[.]" [Bankr. Dkt. 70] at 15. Moreover, through the commercial guaranty, which the Heffners signed when the loan closed, they warranted that "no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially affect Guarantor's financial condition." Id. In fact, two such events had recently occurred, with the biggest one, the $820,000 debt to Merchants Grocery, occurring only one week before the FVCB loan closed. Despite having incurred this debt, the Heffners left FVCB with the 2010 PFS as the last word on their financial condition. Under these circumstances, the court did not clearly err in concluding that the 2010 PFS was a materially false statement. Accordingly, the bankruptcy court properly denied the Heffners a discharge under § 523(a)(2)(B).

8

## C. LMC Loan

Although the conclusion that the 2010 PFS was materially false is an independently sufficient basis to affirm the finding of non-dischargeability, appellants' claims regarding the LMC loan will also be addressed.

Appellants' principal argument on this issue is that FVCB did not adequately plead the LMC loan in its complaint, and therefore it cannot serve as a basis for denying them a discharge under § 727(a)(3) or § 727(a)(5). See Appellants' Br. at 8–12. There is no basis for this argument because, as the court held, the LMC loan falls within the scope of the allegations in the complaint. See [Bankr. Dkt. 79] at 3–4. Specifically, the complaint alleged in Count 3 that "based on the Debtors' testimony during the meeting of the creditors conducted herein, the Debtors have (i) . . . failed to keep or preserve recorded information from which the Debtors['] financial condition or business transactions might be ascertained . . . and (iii) have failed to satisfactorily explain any loss of assets or deficiency of assets to meet their liabilities." [Bankr. Dkt. 1] at ¶ 46. More particularly, FVCB alleged that the Heffners maintained "little to no contemporaneous and credible records to support the value of their assets and liabilities." Id. at ¶ 47(iii). Although the bankruptcy court denied FVCB leave to add a new § 523 willful injury claim on the eve of trial, which would have included an explicit reference to the LMC loan, the broad allegation of insufficient record-keeping under § 727 in Count 3 already reasonably included the LMC transaction within the scope of the complaint.

To the extent that the Heffners argue that the complaint needed to be more specific with respect to Count 3, they have failed to preserve any such objection for appeal. The Heffners did not file a Rule 12(b)(6) motion challenging the sufficiency of the complaint before trial, and did not object when evidence of the LMC loan was presented during the trial. [Bankr. Dkt. 79] at 2–4, and it was the Heffners' attorney who first presented evidence regarding the LMC loan. Id. It

was not until after the judgment order and accompanying Findings of Fact and Conclusions of Law had been issued that the Heffners raised any objection regarding the LMC loan being considered as evidence related to Count 3. See id.

Finally, any error in this regard is harmless. The Heffners attached the evidence they would have produced regarding the LMC loan proceeds to their Motion to Reconsider. [Bankr. Dkt. 73]. The bankruptcy court concluded that this documentation did not account for all the proceeds of the LMC loan because it omitted over $120,000, a finding that the appellants have not contested in this appeal. [Bankr. Dkt. 79] at 3; see [Dkt. 6] at 11–12. There is therefore no indication in the record that additional notice would have enabled the Heffners to produce adequate documentation regarding the proceeds of the LMC loan.[10]  Accordingly, denial of a discharge under §§ 723(a)(3) and 727(a)(5) was proper.

### III.    CONCLUSION

For the reasons stated above, the order of the bankruptcy court dated August 26, 2016, will be affirmed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this _23rd_ day of March, 2017.

Alexandria, Virginia

/s/ _____

Leonie M. Brinkema
United States District Judge

---

[10] The Heffners also argue that the bankruptcy court should not have considered the LMC loan because it was extended to D&F Properties LLC ("D&F"), rather than to the Heffners personally; however, the Heffners have conceded that they are the only two members of D&F. Appellants' Br. at 10.  Accordingly, any argument that the Heffners cannot be faulted for failing to keep the necessary records of how the loan's proceeds were used lacks merit.